UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA KALCHERT,

    Plaintiff,

v.

CYNTHIA ADAMEK et al.,

    Defendants.

Case No. 24-12637
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING
OAKLAND COUNTY'S MOTION TO DISMISS [24]**

---

Joshua Kalchert experienced sepsis, necrotizing fasciitis, and an abscess in his left arm while spending three days in the Oakland County Jail. (ECF No. 1, PageID.5–7.) He alleges that the medical officials at that jail—the individual defendants employed by Defendant Wellpath—acted with deliberate indifference to his serious medical needs. (*Id.* at PageID.7–15.) He brought suit against them, Wellpath, and Oakland County, which now moves to dismiss for failure to state a claim. (ECF No. 24.) The motion is fully and adequately briefed (ECF Nos. 29, 31), so the Court will decide it without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons below, the Court will GRANT Oakland County's motion (ECF No. 24).

**I.**

Kalchert arrived at the Oakland County Jail on October 15, 2021, after the Berkley Police Department arrested him for a parole violation. (ECF No. 29, PageID.715.) During booking, Kalchert told jail officials that he wanted medical

attention because he had a "swollen left wrist and arm with pain and a limited range of motion." (*Id.* at PageID.715–716.) During a medical screening on October 16, Kalchert informed medical officials that he was undergoing withdrawal from drug use, including experiencing seizures. (*Id.* at PageID.716.) The next day, on October 17, Kalchert told medical officials that his wrist and arm were getting worse. (*Id.*) Later that evening, Kalchert was found unresponsive, experienced a possible seizure, and was transported to a local hospital where he was "diagnosed with sepsis, necrotizing fasciitis, and an abscess in his left arm with pain from his elbow down to his left hand," which increased his white blood cell count and respirations and required "surgical intervention." (*Id.* at PageID.716–717.)

## II.

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Kalchert alleges Oakland County is liable for his injuries under 42 U.S.C. § 1983. (ECF No. 1, PageID.15–17.) To state a § 1983 claim against a municipality, "a plaintiff must show that the alleged violation occurred because of a municipal policy, practice, or custom; a municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). That is, "[m]unicipal liability attaches only where the policy or practice in question is 'attributable to the municipality[.]'" *D'Ambrosio v. Marino*, 747

F.3d 378, 387 (6th Cir. 2014) (quoting *Heyerman v. County of Calhoun,* 680 F.3d 642, 648 (6th Cir. 2012)).

There are four ways a plaintiff can show a "municipal policy, practice, or custom": "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019).

Kalchert says Oakland County is liable based on its (1) "customs, policies, and established practices," and (2) "failure to adequately train employees." (ECF No. 29, PageID.720–721.)

### A.

As to his first theory of *Monell* liability, however, Kalchert's complaint does not allege any Oakland County policy. (ECF No. 29, PageID.720 ("Moreover, a Plaintiff need not identify a specific formal *policy* (as opposed to a practice or custom), nor does a specific formal policy even need to exist for *Monell* liability to attach.") (emphasis in original).) But omission of an actual policy is fatal to the first, *policy*-based category of *Monell* liability. *See Jackson*, 925 F.3d at 829 ("When proceeding under the first theory of *Monell* liability, under which a plaintiff must show an official policy or legislative enactment, the plaintiff must show that there were 'formal rules or understandings—*often but not always committed to writing*—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances

3

consistently and over time.'" (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)) (emphasis added in *Jackson*).

## B.

Nor does Kalchert properly allege that Oakland County had a custom of tolerance or acquiescence to like federal violations. To do so, Kalchert must show:

> (1) 'a clear and persistent' pattern of unconstitutional conduct by [county] employees; (2) the [county's] 'notice or constructive notice' of the unconstitutional conduct; (3) the [county's] 'tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction'; and (4) that the policy of inaction was the 'moving force' of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the [county] rather than simply by the conduct of the [county] employee.

*D'Ambrosio v. Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)). Importantly, however, a single incident cannot, by definition, constitute a "clear and consistent pattern." *See Stewart v. City of Memphis, Tennessee*, 788 F. App'x 341, 347 (6th Cir. 2019) ("Arguing that 'one instance of potential misconduct' is evidence of a clear and persistent pattern is a 'path to municipal liability [that] has been forbidden by the Supreme Court.'") (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005)); *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 539 (W.D. Ky. 2005) ("one incident does not show that the Bowling Green Police Department had notice of this type of alleged illegal activity").

But Kalchert does not allege any other incidents of misconduct by Oakland County other than what happened to him. And with respect to his situation, he only

4

alleges the officers' dismissal of his medical complaints during booking at the Oakland County Jail on October 15, 2021. "Plaintiff clearly alleges that *during booking* (which is done by Defendant Oakland County), he continuously complained of pain and swelling in his wrist and arm . . . He also alleged that he had symptoms of cellulitis *at booking* . . . ." (ECF No. 29, PageID.721 (emphases added).) That is insufficient. *See Horton v. Boucher,* No. 22-12529, 2023 WL 4916354, at *3 (E.D. Mich. Aug. 1, 2023) ("A single incident of alleged misconduct does not establish a municipality's policy, practice, or custom.") (citing *Meirs v. Ottawa County*, 821 F. App'x 445, 453 (6th Cir. 2020)).[1]

*Horton* is instructive. Like here, a plaintiff sued Oakland County under *Monell* based on "a custom, policy, or practice of tolerating the violation of constitutional rights by officers." *Horton*, 2023 WL 4916354, at *3. The claim failed, however, where "[t]he only instance alleged where Oakland County employees violated anyone's civil rights is the deputies' single interaction with Mr. Horton on September 11, 2021." *Id.* Just as that plaintiff's interactions with Oakland County employees did not suffice to state a *Monell* claim on September 11, 2021, Kalchert's interaction with Oakland County employees on October 15, 2025, will not either. "The argument that a municipal-wide policy can be inferred from a single instance of misconduct, 'taken to

---

[1] Kalchert correctly appears to concede that his *Monell* claim against Oakland County does not extend to actions by Wellpath medical officials after Kalchert's booking. (*See* ECF No. 29, PageID.721 (alleging, as it relates to Oakland County, only actions "during booking," as those "done by Defendant Oakland County"); (*see also id.* at PageID.723) ("Oakland County is, in the very least, responsible for booking inmates into the jail.").)

its logical end, would result in the collapsing of the municipal liability standard into a simple respondeat superior standard.'" *Id.* (quoting *Thomas*, 398 F.3d at 432–33); *Crabbs v. Scott*, 800 F. App'x 332, 339 (6th Cir. 2020) ("*[R]espondeat superior* liability for § 1983 claims against municipalities . . . has been repeatedly and resoundingly rejected.").

Kalchert's reliance on *Rosario v. Kent County* does not persuade. (ECF No. 29, PageID.720.) Unlike Kalchert (and the plaintiff in *Horton*), the plaintiff in *Rosario* "alleged that the county ignored (i.e. was deliberately indifferent to) his requests for medical attention over a three-month period." *Horton*, 2023 WL 4916354, at *3; No. 17-825, 2019 WL 3296831 (W.D. Mich. 2019). In that case, there were "facts suggesting 'a clear and persistent pattern of illegal activity.'" *Horton*, 2023 WL 4916354, at *3 (quoting *Claiborne County*, 103 F.3d at 508) (brackets omitted). Here, however, Kalchert's claims as to Oakland County do not constitute a "clear and persistent pattern" because they are isolated to a single instance.

## C.

Finally, Kalchert's failure-to-train *Monell* claim must fail as well. "A plaintiff alleging a failure-to-train claim must establish that (1) the municipality's training was inadequate for the tasks its employees must perform; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) 'the inadequacy was closely related to or actually caused the injury.'" *Horton*, 2023 WL 4916354, at *5 (quoting *Jackson*, 925 F.3d at 834). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference

for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

"It is the 'rare' instance where *Monell* liability can be established on a single-incident, failure-to-train theory." *Horton*, 2023 WL 4916354, at *6 (quoting *Connick*, 563 U.S. at 64). It must be "'accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential' for the violation of constitutional rights." *Berry v. Delaware Cnty. Sheriff's Off.*, 796 F. App'x 857, 863 (6th Cir. 2019) (quoting *Shadrick v. Hopkins County*, 805 F.3d 724, 738–39 (6th Cir. 2015)).

As mentioned, Kalchert's allegations are limited to just his situation. He alleges that he "complain[ed] of a swollen left wrist and arm, pain and a limited range of motion" when he was booked at the Oakland County Jail. (ECF No. 29, PageID.723.) Kalchert says he "continued to ask for medical attention during booking," and that "he had symptoms of cellulitis at booking, which was his chief complaint at the hospital when he was finally transferred there." (*Id.* at PageID.723–724.) All of this, Kalchert maintains, "clearly falls under the purview of Oakland County." (*Id.* at PageID.724.)

But Kalchert does not "show a policy of inadequate training or supervision." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.

7

2006). He just concludes, without factual support, that "Oakland County's failure to train its employees resulted in the employees' inability to 'monitor and address serious medical conditions . . . .'" (ECF No. 29, PageID.724.) That is, Kalchert provides no allegations about what training Oakland County provides its employees—either generally or specifically regarding medical intake procedures. He merely *assumes* the training must have been insufficient *because* of Kalchert's injury. That will not work. *See Johnson v. Washtenaw Cnty.*, No. 24-12701, 2025 WL 2773124, at *15 (E.D. Mich. Sept. 26, 2025) ("A plaintiff fails to state a *Monell* failure-to-train claim where there is no 'particular allegations regarding the training [the defendant] provides . . . other than it must be inadequate given the [alleged violation].'") (quoting *Est. of Abbey v. Herring*, 598 F. Supp. 3d 572, 590 (E.D. Mich. 2022)) (both dismissing failure-to-train claims where the plaintiffs did not allege information regarding the training provided).

## III.

For the reasons above, Oakland County's motion (ECF No. 24) is GRANTED.

IT IS SO ORDERED.

Dated: February 20, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

8